# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| **MATTHEW GOODRUM** | ) |
| 5821 NW 72nd Street | ) |
| Kansas City, MO 64151, | ) |
| | ) |
|       Plaintiff, | ) |
| | )   Case No._____ |
| v. | ) |
| | ) |
| **ADVANCED INDUSTRIES, LLC,** | ) |
| *Serve Registered Agent:* | ) |
| CT Corporation System | ) |
| 120 South Central Ave | ) |
| Clayton, MO 63105 | ) |
| | )   **REQUEST FOR JURY TRIAL** |
|       Defendant. | ) |

## **COMPLAINT FOR DAMAGES**

COMES NOW, Matthew Goodrum ("Plaintiff"), by and through his attorneys, for his cause of action against Advanced Industries, LLC ("Defendant"), and alleges as follows for his cause of action:

### **Parties and Jurisdiction**

1. Plaintiff is a citizen of the United States, residing in Lafayette County, Missouri.

2. Defendant is and was at all relevant times a domestic for-profit limited liability company formed under the laws of Missouri, with its principal place of business in Odessa, Lafayette County, Missouri.

3. Defendant maintains and operates a place of business at 301 R.L. Kelly Street, Odessa, Missouri 64076.

4. This is an employment case based upon and arising under the Americans with Disabilities Act ("ADAAA"), as amended in 2008, 42 U.S.C. § 12101 *et seq.*, and the Missouri Workers' Compensation Law, Mo. Rev. Stat. § 287.010 *et. seq.*

5. Plaintiff was an employee of Defendant within the meaning of the ADAAA, and the Missouri Workers' Compensation Law.

6. Defendant is an employer within the meaning of the ADAAA, 42 U.S.C. § 12111(5)(A), and the Missouri Workers' Compensation Law, Mo. Rev. Stat. § 287.030.1.

7. This Court has jurisdiction and venue over all factual and legal matters relevant to the cause of action.

8. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Western District of Missouri Western Division

9. Jurisdiction and venue are proper in the Western District of Missouri Western Division pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 28 U.S.C. § 1391(b).

## Administrative Procedures

10. On or about February 25, 2022, Plaintiff timely filed with the Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination alleging disability discrimination and retaliation (attached as Exhibit 1 and incorporated herein by reference).

11. On or about October 19, 2022, the EEOC issued to Plaintiff a Notice of Right to Sue (attached as Exhibit 2 and incorporated herein by reference) and this lawsuit was filed within ninety (90) days of the issuance of the EEOC's Notice of Right to Sue.

12. The aforesaid Charge of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep

of this judicial complaint may be as broad as the scope of an EEOC investigation, which could reasonably be expected to have grown out of the Charge of Discrimination.

13. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action and it has been filed within the requisite statute of limitations.

**General Allegations Common to All Counts**

14. Plaintiff began working for Defendant on or about April 27, 2020, as a General Laborer II.

15. Throughout Plaintiff's employment with Defendant, Plaintiff began to experience pain in his right hand that increased over time.

16. In approximately Spring 2021, Plaintiff notified Defendant on multiple occasions that he was experiencing pain in his right hand.

17. Also in approximately Spring 2021, Plaintiff began to experience pain in his right shoulder.

18. On or about June 7 2021, the pain in Plaintiff's shoulder and hand became unbearable, so Plaintiff told Floor Supervisor Andrew Jackson ("Supervisor Jackson") that he needed to go to the hospital to have his hand and shoulder examined.

19. Notably, Supervisor Jackson told Plaintiff that he would need to speak with Assistant Plant Manger Kenny [Last Name Unknown] ("LNU") ("Manager Kenny").

20. Plaintiff then spoke with Manager Kenny, who told Plaintiff that he could go to the hospital to get his hand and shoulder examined.

21. The hospital was unable to fully treat Plaintiff's injuries because they did not have an MRI machine, but they provided Plaintiff with a note that stated his injuries were work-related and that Plaintiff needed to be on light duty restrictions.

22. The hospital also referred Plaintiff to an orthopedic surgeon.

23. The following day, on or about June 8, 2021, Plaintiff gave Manger Kenny and Human Resources Mary Brown ("HR Brown") the note from the hospital.

24. Plaintiff told Manager Kenny and HR Brown that he needed to file a workers' compensation claim, but they refused to allow him to do so or give him the information that he needed to do so himself.

25. Specifically, Manger Kenny and HR Brown denied that Plaintiff's injuries were work-related and told Plaintiff that he would have to "figure it out" on his own.

26. Additionally, Manger Kenny and HR Brown told Plaintiff that they did not have any light duty work for Plaintiff to do, so they sent Plaintiff home and told him not to come back until his injuries healed.

27. Approximately a few days later, Manager Kenny contacted Plaintiff and informed Plaintiff that he had an office job for Plaintiff to do.

28. Plaintiff saw the orthopedic surgeon on or about June 15, 2021, who ultimately diagnosed Plaintiff with a rotator cuff tear in his right shoulder, and carpal tunnel with tendonitis in his right hand

29. Shortly thereafter, Plaintiff hired a workers' compensation attorney and filed a workers' compensation claim.

30. On or about July 26, 2021, Manager Kenny and HR Brown came up to Plaintiff and read to Plaintiff the letter they received that informed them that Plaintiff had hired a workers' compensation attorney and filed a workers' compensation claim.

31. Manager Kenny and HR Brown then told Plaintiff to gather his things and leave.

32. Later that day, Plaintiff texted Manager Kenny asking if he should come in or if he was laid off, as he was unsure of what had happened.

33. The following day, Manager Kenny responded "Do not come in."

34. Thus, Defendant terminated Plaintiff on or about July 26, 2021.

## COUNT I
### Disability Discrimination in Violation of the ADAAA 42 U.S.C. § 12101 et seq.

35. Plaintiff re-alleges and incorporates herein by reference as though fully set forth herein, all of the above numbered paragraphs.

36. Plaintiff is disabled or was perceived as disabled pursuant to the ADAAA because he suffers from a torn rotator cuff, carpal tunnel, and tendonitis. Also, Defendant regarded Plaintiff as having these disabilities and has a record of these disabilities; thus, Plaintiff is a member of a class of persons protected by the ADAAA.

37. Plaintiff's disabilities substantially affect several major life activities including, but not limited to, performing manual tasks, lifting, bending, and working, as described in the ADAAA.

38. Plaintiff could perform the essential functions of his job with or without reasonable accommodation.

39. Plaintiff's disabilities or perceived disabilities were a motivating factor in Defendant's decision to terminate Plaintiff.

40. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable for said actions under the doctrine of *respondeat superior*.

41. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

42. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADAAA.

43. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendant, based on his disabilities or perceived disabilities, in violation of the ADAAA.

44. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

45. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, mental anguish, and pain, in the form of garden variety emotional distress and related compensatory damages.

46. As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

47. Plaintiff is entitled to recover from Defendant reasonable attorneys' fees as provided in the ADAAA.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for compensatory damages, including garden variety emotional distress; for reasonable attorneys' fees and costs incurred herein; for punitive damages; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II
## Failure to Accommodate in Violation of the ADAAA 42 U.S.C. § 12101 et seq.

48. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

49. Plaintiff is disabled or was perceived as disabled pursuant to the ADAAA because he suffers from a torn rotator cuff, carpal tunnel, and tendonitis. Also, Defendant regarded Plaintiff as having these disabilities and has a record of these disabilities; thus, Plaintiff is a member of a class of persons protected by the ADAAA.

50. Plaintiff's disabilities substantially affect several major life activities including, but not limited to, performing manual tasks, lifting, bending, and working, as described in the ADAAA.

51. Plaintiff could perform the essential functions of his job with or without reasonable accommodation.

52. Defendant refused to engage in any interactive process with Plaintiff to determine a reasonable accommodation for his disabilities.

53. Instead of allowing Plaintiff to work with light duty restrictions, Defendant terminated Plaintiff's employment.

54. Defendant made no good faith effort to assist Plaintiff in seeking accommodations.

55. Plaintiff could have been reasonably accommodated but for Defendant's lack of good faith and lack of willingness to engage in the interactive process.

56. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

57. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, mental anguish, and pain, in the form of garden variety emotional distress and related compensatory damages.

58. As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

59. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant as provided in the ADAAA.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for compensatory damages, including but not limited to garden variety emotional distress; for reasonable attorneys' fees and costs incurred herein; for punitive damages; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III
**Retaliation in Violation of the ADAAA 42 U.S.C. § 12101 et seq.**

60. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

61. Plaintiff engaged in a protected activity by reporting his disabilities to Defendant and requesting a reasonable accommodation of working with light duty restrictions.

62. Defendant untimely terminated Plaintiff, on or about July 26, 2021, as a result of Plaintiff's above-referenced protected activities.

63. The fact that Plaintiff engaged in a protected activity was at least a motivating factor in Defendant's decision to take adverse action against him.

64. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and

course of their agency and employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable for said actions under the doctrine of *respondeat superior*.

65. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees.

66. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADAAA.

67. As shown by the foregoing, Plaintiff suffered intentional retaliation at the hands of Defendant, based on engaging in a protected activity, in violation of the ADAAA.

68. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

69. As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, mental anguish, and pain, in the form of garden variety emotional distress and related compensatory damages.

70. As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

71. Plaintiff is entitled to recover from Defendant reasonable attorneys' fees as provided in the ADAAA.

WHEREFORE, Plaintiff requests that the Court enter judgement in his favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for compensatory

9

Case 4:23-cv-06007-FJG   Document 1   Filed 01/17/23   Page 9 of 12

damages, including but not limited to garden variety emotional distress; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT IV
### Retaliation in Violation of the Missouri Workers' Compensation Law, Mo. Rev. Stat. § 287.780

72. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

73. Defendant was Plaintiff's employer pursuant to the Workers' Compensation Law.

74. Plaintiff exercised his rights under the Workers' Compensation Law when he suffered a workplace injury, reported that injury, sought treatment for that injury, and filed a claim for his injury.

75. Defendant knew or anticipated that Plaintiff did or would file a workers' compensation claim before Defendant terminated his employment.

76. Plaintiff was subsequently terminated by Defendant.

77. Plaintiff's exercise of his workers' compensation rights was a motivating factor in Defendant's decision to terminate Plaintiff.

78. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine of *respondeat superior*.

79. Defendant failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees.

80. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the Workers' Compensation Law.

81. By failing to take prompt and effective remedial action, Defendant in effect condoned, ratified, and/or authorized retaliation against Plaintiff.

82. As shown by the foregoing, as a result of exercising his workers' compensation rights, Plaintiff suffered intentional retaliation in violation of the Workers' Compensation Law.

83. As a direct and proximate result of Defendant's acts and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

84. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem, in the form of garden variety emotional distress and related compensatory damages.

85. As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for compensatory damages; for reasonable attorneys' fees and costs incurred herein; for punitive damages; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## **Demand for Jury Trial**

Plaintiff requests a trial by jury, in the United States Western District of Missouri Western Division, on all counts and allegations of wrongful conduct alleged in this Petition.

Respectfully Submitted,

**CORNERSTONE LAW FIRM**

By: */s/ Lauren H. Beck*
M. Katherine Paulus   MO 60217
m.paulus@cornerstonefirm.com
Lauren H. Beck        MO 72724
l.beck@cornerstonefirm.com
5821 NW 72nd Street
Kansas City, Missouri 64151
Telephone         (816) 581-4040
Facsimile         (816) 741-8889
**ATTORNEYS FOR PLAINTIFF**